IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

STATE FARM INSURANCE COMPANY,

    Plaintiff,

v.                                                  No. 13cv00666 WJ/SCY

DOUGLAS BELL AND THERESA BELL,
Individually and as parents of SOPHIA
BELL, a minor,

    Defendants.

### MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
### and
### GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**THIS MATTER** comes before the Court upon Plaintiff's Motion for Summary Judgment, filed May 29, 2014 **(Doc. No. 32)** and Defendants' Cross-Motion for Summary Judgment, filed July 11, 2014 **(Doc. No. 37)**. Having considered the parties' briefs[1] and the applicable law, the Court finds that Plaintiff's motion is not well-taken and, therefore, is DENIED. Further, the Court finds that Defendants' motion is well-taken and, therefore is GRANTED.

### Background

This is a declaratory judgment action in which Plaintiff seeks a declaration that it is not required to cover Defendants' injuries under an Uninsured/underinsured Motorist policy. The

---

[1] Plaintiff's Motion for Summary Judgment is fully briefed. See **(Doc. No. 42)**, Notice of Completion of Briefing. Defendants have not filed a Reply in Support of their Cross Motion for Summary Judgment. However, because all of the briefing covered the same facts and law, the Court finds it has enough information to rule. Further, because the Court is ruling in favor of Defendants, Defendants are not prejudiced by not having had an opportunity to file a reply brief.

claim for coverage arises out an incident where Sophia Bell, Defendants' minor daughter, was bitten by a dog owned by her then teacher Melissa LaBarre. The dog, Jeb, is a 65-pound Labrador Retriever/Boxer mix. Sophia was bitten as she attempted to pet Jeb while Jeb was inside Ms. LaBarre's vehicle parked in the Bells' driveway. Sophia was seriously injured by the bite and required numerous surgeries to repair the damage. Defendants made a claim under their Uninsured/Underinsured Motorist Policy with Plaintiff. Plaintiff asserts that the vehicle was the mere situs of the injury, therefore the event does not fall within the insurance policy. Defendants contend the injury arose out of the use of the vehicle; therefore, they are entitled to coverage. Plaintiff does not otherwise dispute coverage, i.e. Plaintiff agrees that Ms. LaBarre is underinsured within the meaning the policy.

## Undisputed Material Facts[2]

On January 17, 2009, Melissa LaBarre, the then teacher of Sophia Bell, was at the Bells' residence to drop off a kitten. Ms. LaBarre brought Jeb with her on the trip, because after leaving the Bells' Ms. LaBarre intended to drop Jeb off at her parents' home while she ran errands. Ms. LaBarre left Jeb inside her vehicle parked in the Bells' driveway while she went into the Bells' residence. Ms. LaBarre was inside the Bells' residence between 15-45 minutes. At the completion of their visit, Ms. LaBarre, Sophia, and Sophia's mother, Theresa Bell, went out to the driveway. Sophia remained outside the vehicle, although she may have leaned into the car, and attempted to hug Jeb. Sophia was face to face with Jeb because of the height of the SUV. Jeb growled and barked at Sophia and ultimately bit Sophia. Ms. LaBarre and Ms. Bell immediately separated Sophia and Jeb. Sophia experienced serious injuries to her face, requiring

---

[2] These facts are taken from the parties' briefs and are properly supported by evidence in the record. Where there are disputed facts, the Court will note any disputes and how it resolved those disputes. If a fact submitted by the parties is omitted, it is due to the Court's determination that either the fact was in dispute, was not material, or that it was otherwise not properly before the Court.

a number of reconstructive surgeries.

Jeb frequently rode in Ms. LaBarre's car when she ran errands. Jeb and Ms. LaBarre had a close relationship. Ms. LaBarre testified that she felt the incident could have been avoided if she had introduced Jeb to Sophia outside of the vehicle. Ms. LaBarre further testified that she saw Jeb go from a standing to a lying position before the bite which she recognized as a fearful reaction.

Defendants submitted the report of Dr. Jeff Nichol, a veterinarian. Plaintiff objected to a number of Dr. Nichol's conclusions as speculative and immaterial. While Plaintiff does not specifically challenge Dr. Nichol's qualifications, as a preliminary matter, the Court notes that Dr. Nichol's 38 years as a veterinarian, specifically focusing on animal behavior for the last 12 years, qualifies him to make observations about general trends in dog behavior. Further, the Court believes that Dr. Nichol's testimony is helpful in deciding this issue, is based upon sufficient facts and data, and is the product of reliable principles and methods that were reliably applied in this matter; thus satisfying the requirements of Fed. R. Evid. 702. In regards to Plaintiff's objections, Plaintiff merely alleges that Dr. Nichol's conclusions are speculative in a conclusory manner without any legal argument to support its objection. The Court will not sustain such objections. The Court partially agrees with Plaintiff's contention that some of Dr. Nichol's conclusions are immaterial, and will only consider those opinions which bear on whether the bite was facilitated by the vehicle. Finally, the Court notes that beyond claiming the opinions were speculative and immaterial, Plaintiff did not specifically dispute Dr. Nichol's conclusions, nor did it refute his conclusions with contrary evidence. Accordingly, the Court will consider Dr. Nichol's opinions for what they are worth.

Dr. Nichol stated that Jeb developed a strong attachment to Ms. LaBarre, based upon

several factors including the fact that Ms. LaBarre was the only human in the household and that Jeb was the only animal in the household. Dr. Nichol further stated that as Sophia was unfamiliar to Jeb, Jeb was likely startled by Sophia's sudden appearance at the car door and by her attempts to hug him. This is confirmed by Ms. LaBarre's testimony about Jeb's reaction to Sophia. Dr. Nichol testified that due to the fact that Jeb was inside a vehicle, he was trapped and had no way to escape what Jeb perceived to be a potential threat. Dr. Nichol then recounted his own experience with handling dogs in vehicles:

> Having handled thousands of dogs in veterinary medical settings over the past 46 years I can recount many instances of them lunging aggressively at strangers who have had the temerity to reach into a car they occupied. Experienced veterinarians, as well as their technicians and assistants, are well aware of the potential for injury following this mistake. We never get into a car to examine or treat. Instead we ask owners to lead their dogs out of their cars, into the open. A dog's perception of no longer having to guard its territorial resource usually changes the dynamic significantly and thus dramatically reduces the risk of human injury. For dog owners without this knowledge or experience it is best not to assume that their dog will be as gentle in a confined space as it would in different surroundings.

(**Doc. No. 37-2**), p. 4.

## Discussion

**I.      Standard for Summary Judgment**

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(c); Martinez v. Beggs, 563 F.3d 1082, 1088 (10th Cir. 2009). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. Id. Once that burden is met, the nonmoving party must put forth specific facts showing that there is a genuine issue of material fact for trial; he may not rest on mere

allegations or denials in his own pleadings.  Anderson v. Liberty Lobby, 477 U.S. 242, 256-57 (1986).  In order to avoid summary judgment, the nonmoving party must put forth enough evidence that a reasonable jury could return a verdict in the nonmovant's favor.  Id. at 249.  A mere scintilla of evidence in the nonmovant's favor is not sufficient.  Id. at 252.

**II.      New Mexico Law Regarding the Connection Between Use of a Vehicle and Injury**

In order for Defendants to be entitled to compensation under their insurance policy, the injury must have "aris[en] out of the operation, maintenance, or use of an uninsured motor vehicle."  See Exhibit A to Plaintiff's Motion **(Doc. No. 32)**, State Farm Insurance Policy.  Because this matter is before the Court upon the basis of diversity jurisdiction, the Court applies New Mexico substantive law.  Scottsdale Ins. Co. v. Tolliver, 636 F.3d 1273, 1277 (10th Cir. 2011) ("Since this case is grounded on diversity jurisdiction, we are obligated by the Erie doctrine to apply the substantive law of the forum state, in this case Oklahoma, but we apply federal procedural law.") (citing Erie R. Co. v. Tompkins, 304 U.S. 64 (1938)).

There is not a New Mexico case specifically dealing with whether a dog bite is an incident which arises out of the use of the vehicle.[3]  However, the New Mexico Supreme Court set forth the test for determining whether an injury arises out of the use of a vehicle for the purposes of automobile insurance coverage in Britt v. Phoenix Indem. Ins. Co., 1995-NMSC-075, 120 N.M. 813, 907 P.2d 994.  The New Mexico Supreme Court adopted the so-called "Klug test" set forth by the Minnesota Supreme Court.  See id., at ¶15 (citing Cont'l W. Ins. Co. v. Klug, 415 N.W.2d 876, 877 (Minn. 1987)).  There are three considerations under the Klug/Britt test: 1) "whether there is a sufficient causal nexus between the use of the uninsured vehicle and

---

[3] Defendants raised the idea that the Court might certify this matter to the New Mexico Supreme Court, because it raises a novel issue.  While the Court agrees this is a novel fact situation in New Mexico, this is not a novel legal issue.  New Mexico's existing legal framework for determining when an injury arises in connection with the use of a motor vehicle is sufficient for the Court to decide this question.

the resulting harm. Such a causal nexus requires that the vehicle be an active accessory in causing the injury."; 2) "whether an act of independent significance broke the causal link between the use of the vehicle and the harm suffered."; and 3) "whether the use to which the vehicle was put was a normal use of that vehicle." Britt, ¶15 (internal citations and quotation marks omitted).

### III.   Application of the Brit test to the Incident[4]

A.   *The Vehicle was an Active Accessory in Causing Sophia's Injuries*

In State Farm Mut. Auto. Ins. Co. v. Blystra, 86 F.3d 1007, 1011 (10th Cir. 1996), the Tenth Circuit reviewed the district court's application of the Britt test to case involving a drive-by shooting.  The Tenth Circuit concluded that the vehicle was an "active accessory" in the shooting:

> Through the use of an automobile, a drive-by shooter achieves several advantages in the commission of his crime that would otherwise be unavailable to him. First, the assailant can use the vehicle to unsuspiciously and quickly approach his victim, all the while hiding from public observation that he is armed with a gun. Second, during the commission of the assault, the assailant can use the vehicle to help hide his identity. Third, the assailant can use the vehicle to leave the scene quickly and avoid apprehension.

Id., 86 F.3d at 1012.

Although Blystra did not involve a dog bite, the Court's analysis provides some illumination on the "active accessory" prong.

Further, a number of courts around the country have been faced with similar factual situations, several of them even using the Klug test adopted in Britt.  Both parties cited to other courts' decisions involving automobile insurance coverage for dog bites; the Court considers this

---

[4]  Plaintiff does not dispute the second factor, whether an independent act broke the causal chain, because Plaintiff contends there was no causal chain to begin with.   Further, the Court finds that there was no such intervening act severing the causal chain.  Therefore the second Brit requirement is satisfied.

precedent for its persuasive value.[5]

Other courts have found persuasive the question of whether the purpose of the trip was to transport the dog and whether the trip was completed at the time of the injury.  See Boatright v. State Farm Mut. Auto. Ins. Co., 309-CV-946-J-32MCR, 2010 WL 2220250 (M.D. Fla. June 2, 2010) ("The connection between [the victim's] injuries and the motor vehicle was too tenuous, the dog's connection to the vehicle was just mere coincidence, and the car trip was over at the time of the accident."); American States Insurance Co. v. Allstate Insurance Co., 484 So.2d 1363 (Fla. Dist. Ct. App. 1986) (finding there was no causal nexus where the only purpose of the motor vehicle trip was to go to the grocery store and the dog was merely along for the ride); Underwriters Guarantee Ins. Co. v. Therrien, 640 So.2d 234 (Fla. Dist. Ct. App. 1994) (while the dog bite may have occurred inside the vehicle, it was not a "use" of the vehicle, nor was there a sufficient nexus to invoke coverage where the transportation of the dog was not the purpose of the trip.).  Plaintiff urges the Court to hold there was not a sufficient nexus between the injury and the use of the vehicle because transporting Jeb was not the *sole* purpose of the trip. However, the case law cited by Plaintiff did not focus on whether transporting the dog was the sole purpose of the trip, because it was not the purpose of a trip at all; the cases cited by Plaintiff concerned instances where the driver was going on an errand and the dog was simply along for the ride.    By contrast, in this case, parties agree that at least part of the purpose of the trip was to transport Jeb to Ms. LaBarre's parents' home.  This makes the instant case more similar to Nat'l Indem. Co. v. Corbo, 248 So. 2d 238, 241 (Fla. Dist. Ct. App. 1971).  See id., at 241

---

[5] However, a number of the cases cited by Plaintiff are inapposite to the facts at hand.  For example Plaintiff relies upon Sanchez v. State Farm Mutual Auto. Ins. Co., 878 P.2d 31 (Colo. Ct. App. 1994).  But in Sanchez, the dog had actually exited the vehicle at the time of the bite breaking the link between the vehicle and the bite, whereas Jeb remained inside the vehicle.  Id., at 32.  Additionally, Plaintiff cites Keppler v. American Family Mutual Insurance Co., 588 N. W.2d 105 (Iowa 1999), where the court focused heavily on the fact that the vehicle was not moving at the time of the incident and the keys were not in the ignition, factors that are not determinative under the Brit test.

(where the plaintiff was bit during a brief stop on a trip from the dog owner's home to the owner's place of business, the court found that the dog bite arose out of the use of motor vehicle because the trip's purpose was to transport the dog rather than the dog simply being along for the ride). Plaintiff also asserts that there can be no coverage because the sole purpose of the trip was not to introduce Jeb to Sophia. Plaintiff cites no legal authority in support of this argument. Moreover, the relevant case law does not support such a requirement. It is enough that the purpose of the trip was, at least in part, to transport Jeb.

Further, the bite was facilitated by the height of the vehicle, placing Jeb and Sophia face to face. See Diehl v. Cumberland Mut. Fire Ins. Co., 296 N.J. Super. 231, 236, 686 A.2d 785, 788 (App. Div. 1997) (Finding that a dog bite occurring while the dog was inside the vehicle met the first Klug factor and noting, "the bite incident was facilitated by the height [of the vehicle].").

Finally, and most importantly, the testimony of Dr. Nichols and Ms. LaBarre herself demonstrate that the bite occurred because of the unique setting of the car.[6] Contrary to Plaintiff's assertion, the fact that Jeb was specifically territorial over the vehicle is relevant; it transforms the vehicle from the mere situs of the injury into a contributing factor to the bite. Jeb felt threatened because he was in a confined space, the vehicle. Further, being in a confined space not only made him feel threatened but also made him territorial over the vehicle. Therefore, it was something about the characteristics of the vehicle itself that facilitated the bite, making the vehicle an active accessory to the bite. This was more than simply transporting Jeb in the vehicle. See Am. Int'l S. Ins. Co. v. Morrow, CIV.A. 07C-04-001, 2008 WL 3321331

---

[6] This testimony is far more definitive than the testimony in the case cited by Plaintiff, Heringlake v. State Farm Fire & Cas. Co., Inc., 74 Wash. App. 179, 872 P.2d 539 (1994). In Heringlake, the court found the dog owner's testimony, "I think maybe being tied in the truck like that [the dog] might have felt confined or something, maybe" was mere speculation insufficient to establish causation on a motion for summary judgment. See id., 74 Wash. App. at 192, 872 P.2d at 548.

(Del. Super. May 2, 2008) (Generally, the fact that the vehicle is regularly used for transporting a dog is not enough to establish a causal connection if something about the vehicle itself did not contribute to the action of the dog biting someone.") (citations omitted). The Brit test does not require absolute certainty that the injury would not have occurred but for the use of a vehicle, it only requires that the vehicle itself contribute to the injury. For example in Blystra, the offender may very well have been able to shoot the victim even without the vehicle, but the vehicle contributed to the attack nonetheless; therefore, the Tenth Circuit found the Brit test was satisfied. See Blystra, 86 F.3d at 1012.

    B. *Transporting Jeb was a Normal Use of the Vehicle*

  Plaintiff's arguments about this prong of the Brit test misstate the standard and also incorrectly conflate the first and third factors. Plaintiff argues that the normal use of the vehicle did not cause the bite. However, this is not the correct consideration for the third prong, which simply asks, "whether the use to which the vehicle was put was a normal use of that vehicle" and does not address causation. Britt , ¶15. Here, the vehicle was being used to transport Jeb, a frequent practice of Ms. LaBarre. Transportation is a normal use of a vehicle. See id. (For example, transportation would be a normal use, whereas use of a parked car for a gun rest would not be."); Blystra, 86 F.3d at 1011-12 ("Under Britt's third prong, we must determine whether the use of the truck during the shooting was a 'normal use' of the vehicle. At the time of the shooting, the assailant was utilizing the truck as transportation; *i.e.,* he was using the truck as a means "[t]o convey [himself] from one place to another." Clearly, such use falls within Britt's 'normal use' requirement.'") (internal quotations omitted; alteration in original). Accordingly, the Court finds that the bite occurred while the vehicle was being put to its normal use.

**Conclusion**

Whether Defendants are entitled to coverage hinges upon whether Sophia's injuries arose out of the use of a motor vehicle. Both parties having filed summary judgment motions, the parties agree that this issue is properly resolved by way of summary judgment. All factors of the Brit test for arising out of the use of a motor vehicle are met. Accordingly, Defendants are entitled to coverage for Sophia's injuries pursuant to the Uninsured/Underinsured Motorist Policy.

**THEREFORE, IT IS ORDERED**, that Plaintiff's Motion for Summary Judgment **(Doc. No. 32)** is **DENIED** and Defendants' Cross-Motion for Summary Judgment **(Doc. No. 37)** is **GRANTED**. Plaintiff does have a duty to compensate Defendants under the Underinsured/Uninsured Motorist Policy for the injuries sustained by Sophia during the dog bite on January 17, 2009. The Court shall enter a separate judgment consistent with this Order.

_____
UNITED STATES DISTRICT JUDGE